**Erhard W. WILL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 18654.**

United States Court of Appeals, Seventh Circuit.

Aug. 25, 1971.

**530**

Ralph M. Schelly, Chicago, Ill., for petitioner.

William J. Bauer, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chi-

cago, Ill., Will Wilson, Asst. Atty. Gen., Paul C. Summit, Murray R. Stein, Attys., Dept. of Justice, Washington, D. C., of counsel, for respondent.

Before PELL and STEVENS, Circuit Judges, and MORGAN, District Judge.*

PELL, Circuit Judge.

This is a petition for review of an order of deportation. Petitioner Will was born on August 30, 1945, in Germany and is a citizen thereof. He entered the United States on October 4, 1956, as a permanent resident alien. His parents are permanent resident aliens and his wife is a native born United States citizen.

On October 3, 1968, Will was ordered to show cause why he should not be deported from the United States pursuant to Section 241(a) (11) of the Immigration and Naturalization Act, 8 U.S.C. § 1251(a) (11),[1] in that he had been convicted on a plea of guilty of the illegal possession of marijuana. In order to allow Will an opportunity to pursue review actions then underway in the state courts, the deportation hearing was twice postponed. On March 25, 1969, Will appeared with counsel before a Special Inquiry Officer. His conviction on a plea of guilty in a Cook County, Illinois, court on August 23, 1968, of the offense of feloniously having marijuana in his possession in violation of Chapter 38, Section 22–3 of the Illinois Revised Statutes, was admitted. A certified copy of the conviction record was entered into evidence without objection. Will, however, contended that the conviction was not final because post-trial motions, which could result in setting aside the conviction, were still pending. These motions were denied by the Circuit Court of Cook County on July 28, 1969, and

---

* Judge Morgan of the Southern District of Illinois is sitting by designation.

1. Section 241(a) (11) provides, in relevant part:
   (a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \*
   (11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana. * * *

are pending on appeal to the Appellate Court of Illinois.

On September 19, 1969, a Special Inquiry Officer found Will deportable as charged. The Board of Immigration Appeals dismissed Will's appeal on April 30, 1970, over his contention that his narcotics conviction was not final and therefore could not at that time provide a basis for an order of deportation under the Act. The Board in dismissing the appeal noted that petitioner's appropriate remedy was to apply to the district director for such stay as necessary while obtaining appellate review of the criminal matter, which, if concluded in his favor, could provide a basis to reopen the deportation proceedings.

As a matter of fact, the Government in its brief stated that although there might be in some cases aggravated circumstances under which a stay of deportation would not be granted, in view of the facts of this particular case, Will would upon application with the district director be permitted to remain in the United States until disposition of his appeal pending in the Appellate Court of Illinois. This assertion, of course, was made upon the assumption that Will would in good faith prosecute his appeal in a timely manner.

The term "convicted" has been given various meanings by state courts depending upon the context. At times it has been held to mean no more than the entry of a plea or verdict of guilty; at other times, imposition of sentence and entrance of judgment has been required. Sometimes the exhaustion or waiver of appeal rights has been found necessary to the existence of a "conviction." *See* Annotation, What amounts to conviction or satisfies requirement as to showing of conviction, within statute making conviction a ground for refusing to grant or for canceling license or special privilege. 113 A.L.R. 1179.

■ We must, however, agree with other circuits that Congress intended the term "convicted" to be given meaning in light of federal law and policies rather than on the basis of "all the peculi-

arities of the laws of the various states." Garcia-Gonzales v. I. N. S., 344 F.2d 804, 808–809 (9th Cir. 1965), cert. denied, 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81. "[I]n the interest of a uniform application of the federal statute, the meaning of the word 'convicted' is a federal question to be determined upon due consideration the policy which § 241(a) (4) [substantially similar to § 241(a) (11)] of the Immigration and Nationality Act was designed to serve." Pino v. Nicolls, 215 F.2d 237, 243 (1st Cir. 1954), rev'd on other grounds, Pino v. Landon, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955). Cf. United States ex rel. Freislinger on Behalf of Kappel v. Smith, 41 F.2d 707, 708 (7th Cir. 1930), discussed in *Pino, supra,* 215 F.2d at 242–243.

■ The parties have not cited, nor have we found, anything of significance in the legislative history of the Act casting light on the precise concept Congress sought to embody by the use of the term "convicted" in Section 241(a) (11). However, it appears clear from the Supreme Court's decision in *Pino, supra,* 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239, and from past administrative interpretation that the Section contemplates a conviction which has attained a substantial degree of finality.

In *Pino,* an alien had been found guilty in the Massachusetts district court of petty larceny. After waiving all of his appeal rights from that verdict, the alien was placed on probation for one year. Under a special Massachusetts procedure, upon the satisfactory completion of his probation, his sentence was revoked and his case was put "on file." The "on file" status meant that the case remained on the records of the court but no further action would normally be taken. However, it was theoretically possible that the case could again be called up and a sentence imposed, at which time the defendant-alien could appeal from the sentence so imposed and secure a trial *de novo* in the Massachusetts superior court.

The First Circuit began by rejecting Government arguments that the convic-

tion was final for purposes of Section 241(a) (4) when the verdict of guilty was returned:

"A verdict or finding of guilty is usually followed by a motion for a new trial which * * * frequently results in the award of a new trial. So, too, appeals from conviction in the trial court often result in the award of a new trial. Judicial action on the motion for a new trial made immediately after verdict or finding of guilt, and judicial action in the normal routine appellate review provided by law, are part of the ordinary processes of re-examination, the outcome of which perhaps ought to be awaited before it can be said, with sufficient certainty and definiteness, that the state has 'convicted' the alien of crime." *Pino, supra,* 215 F.2d at 244.

Nevertheless, the court went on to hold that the "on file" status of Pino's conviction did not negate its finality since the Government was not required "to wait forever, until every remote possibility of ultimate upset of a conviction has been extinguished." *Id.*

On *certiorari* to the Supreme Court, the holding of the First Circuit was reversed by the following *per curiam* opinion, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955):

"On the record here we are unable to say that the conviction has attained such finality as to support an order of deportation within the contemplation of § 241 of the Immigration and Nationality Act. The judgment is reversed."

We are not unmindful of what could be interpreted to be contrary statements on the matter of finality of a conviction even though the case is on a direct appeal. Thus in Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 189, 61 S.Ct. 513, 515, 85 L.Ed. 725 (1941) the Supreme Court stated:

"[I]n the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality."

Similarly, in Miller v. United States, 147 F.2d 372, 374 (2nd Cir. 1945), the court stated:

"An appeal does not affect the finality, it merely stays execution, of the judgment pending appeal. The judgment of affirmance, therefore, adds nothing to the finality of the judgment. It merely does away with the suspension and reinstates the judgment as it stood before the appeal was taken."

Nevertheless, in view of the later pronouncement of the Supreme Court in *Pino,* we must conclude that conviction per se is not sufficient to justify a deportation order but that a final curtain must have been drawn in the criminal proceedings.

This, of course, poses difficult problems of application to a reviewing court. The books are replete with cases setting aside convictions in habeas corpus and similar proceedings initiated many years after the exhaustion of all direct appeal proceedings. These cases would seem to suggest that no conviction (for purposes of deportation) was ever really final.[2] However, a sound public policy, in our opinion, precludes reaching this *reductio ad absurdum* as to the Congressional intent.

In the present case there were three motions in the Cook County court. The first of these, designated as a motion in arrest of judgment, was filed on November 13, 1968. The second motion, filed March 24, 1969, was designated a motion for writ of coram nobis. The third motion, filed the same day, was designated a post-conviction petition.

■■ Without becoming involved in detailing the grounds advanced in the

2. It might be argued that an exception might exist if the defendant had waived all rights of post-conviction attack, but even waivers have succumbed to attacks such as that of duress or lack of voluntariness.

second and third motions, it appears clear under Illinois procedure, even though one or the other might be the basis for setting aside the conviction, that each is a post-conviction attack essentially of a collateral nature. We therefore would, insofar as these motions are concerned, find finality, leaving Will to his administrative remedy of stay. A denial of stay itself would be subject to review if the administrative discretion were abused. To hold otherwise would substantially do away with deportation for conviction as the ingenious deportee could by a succession of post-conviction proceedings postpone finality of judgment.

Turning, however, to the first motion we find what is in the category of direct appeal, which is still pending. The entire thrust of the first motion is that Will had been convicted of possessing a narcotic drug, that marijuana was classified as a narcotic drug and that it was not a narcotic drug in fact and therefore no crime had been committed to support the judgment of conviction. It was further claimed that the classification of marijuana as a narcotic drug in the Illinois statute was unconstitutionally unreasonable, arbitrary and capricious.

While arguably there may be an extremely questionable likelihood of Will prevailing in the direct appeal,[3] nevertheless, we do not deem it our province, nor duty, to reach a decision in this respect. Aside from questions of comity, the importance of which should not be minimized, the necessity of this sort of duplicitous review of pending state court appeals would impose an unduly onerous chore on already overburdened courts.

We therefore hold that as long as a direct appeal is pending, it is sufficient to negate finality of conviction for the purposes of 8 U.S.C. § 1251(a)(11).

We are not unmindful of policy arguments that once an alien has been convicted of one of the specified crimes, he should not be permitted to be at large in the country which has permitted his entry during the months, indeed years, of direct appellate procedure unless it is administratively determined by the Immigration and Naturalization Service that the deportation order should be stayed pending the ultimate outcome. However, we are also mindful that with very few exceptions the privilege of being at large is accorded to any convicted criminal pending the exhaustion of appellate procedures. Further, safeguards exist in state procedures for the denial of bail pending appeal for the convicted alien deemed to be a threat to the public safety.

For the foregoing reasons, the petition for review is granted and the order of deportation heretofore entered is hereby set aside, subject to further appropriate administrative proceedings when the direct appellate procedures here involved have reached the stage of finality.

3. *See* People v. Walton, 116 Ill.App.2d 293, 253 N.E.2d 537 (1969); People v. Stark, 157 Colo. 59, 400 P.2d 923 (1965); Commonwealth v. Leis, 243 N.E.2d 898 (Mass.1969); and Davis v. Mississippi, 219 So.2d 678 (Miss.1969).